[No. 6280.]

## Burns et al. v. Herman et al.

1. **Appeals — Verdict on Conflicting Evidence**, legally suffi-cient, will not be disturbed.—(361)

2. ——**Abstract**—Objections taken to instructions given will not be considered, unless the abstract of the record shows that all the instructions so given are set out.—(361)

3. ——**Harmless Error**—Error in the instructions as to the measure of plaintiff's damages is harmless, where the jury finds the issues for the defendant.—(362)

4. **Negligence—Examples**—Defendants having advertised a balloon race, had afterwards prohibited it. Without further direction from defendants, and without their knowledge, one of the areonauts attempted to make the ascent, and during this at-tempt an accident occurred to a spectator. The defendants were acquitted.—(363, 364)

5. **Contributory Negligence—Examples**—A boy, who being at a public resort, voluntarily quits a place of safety, and goes to a place where, as he knows, he is exposed to danger, is guilty of contributory negligence.—(365)

*Error to Pueblo District Court*—Hon. Louis W. Cunningham, Judge.

Mr. M. J. Galligan, for plaintiffs in error.

Messrs. Devine, Dubbs & Preston, and Mr. Henry C. Vidal, for defendants in error.

Mr. Justice Campbell delivered the opinion of the court:

The defendants below, defendants in error here, are business men of Pueblo, and head officers and members of different unincorporated associations or bodies of men engaged in various branches of trade. As associations they united for the purpose of giving an entertainment for the local public at the State Fair grounds at Pueblo, July 4, 1905, for which a prescribed admission fee was charged. They advertised the entertainment, setting forth various attractions, among them a balloon race. They entered into contracts with aeronauts to make the race, and plaintiffs concede that competent and fit men were selected for that purpose. Under these contracts the aeronauts furnished the balloons, had complete charge of all preliminary preparations for the ascension, and the same were entirely under their supervision, defendants reserving no control over them as to the mode or manner of doing the work. In attempting to make an ascension a pole, which constituted one of the supports of the balloon, fell and struck and killed the fifteen years old son of the plaintiffs, who bring this action to recover compensatory damages therefor. The jury found in favor of defendants, and from the judgment rendered thereon dismissing the action plaintiffs appealed.

The abstract of the record is quite incomplete and does not give an adequate idea of the issues involved, or of the evidence. A supplemental abstract

filed by appellees is more helpful. The principal points relied upon by defendants at the trial were that, if it be assumed that negligence of the aeronaut and his workmen caused the injury, defendants are not responsible for it, upon the grounds that the aeronaut was an independent contractor employed to give the ascension, which is not inherently dangerous; that plaintiffs' son did not pay any admittance fee to the grounds, but "came over the enclosure" and was a mere trespasser; that he was guilty of contributory negligence, and that defendants forbade and called off the exhibition before it was given.

In the state of the record as we find it, we are obliged to affirm the judgment. The evidence being conflicting, but legally sufficient to sustain the verdict, we cannot interfere therewith unless the court committed prejudicial error during the trial in some one or more of its rulings, which we do not find it did. We must presume that the court sufficiently and properly instructed the jury. The abstract does not show that the instructions tendered by plaintiffs and refused by the court were objected to. Some contain more than one legal proposition, at least one of which is good. So far as pertinent to the case, the good parts of the tendered instructions were, or may have been, given by the court of its own motion. The abstract, however, does not show that all the instructions which the court gave of its own volition are before us for consideration. We are therefore, under our rules, precluded from considering the objections which appellants' counsel have argued here to certain instructions, which it says the court gave over its objection. We may say, however, that from our examination of such of the instructions complained of as the abstract shows were given, we are not convinced that the court committed harmful error. It seems to have instructed upon the opposing theories

of the respective parties and if there·is any defect in
the instructions it is one of nondirection, not mis-
direction, at least so far as concerns the controlling
questions in the· case.

The most serious complaint seems to be of an
instruction on the measure of damages. If it be
erroneous, the giving of it does not constitute preju-
dicial error, for the jury found, under proper instruc-
tions, in favor ·of defendants upon all the issues of
the case. There was no occasion, therefore, for the
jury to consider the measure of damages. Having
found for defendants on the question of negligence,
the main issue, the part of the charge objected to had
no office to fulfill, as the jury did not reach that branch
of the case.—*Oppenheimer v. R. R. Co.,* 9 Colo. 320;
*Sutton v. Dana,* 15 Colo. 98; *Gutshall, v. Crawford,*
19 Colo. 270; *Zimmerman v. Denver Consolidated
Tramway Co.,* 18 Col. App. 480.

Our attention has not been called to any wrong-
ful rulings by the court upon the evidence; at least
none of any serious moment.

There is considerable discussion as to whether
the doctrine of independent contractor is applicable,
or whether plaintiffs' alleged trespass was proved.
The evidence clearly shows the existence of an inde-
pendent contract as alleged, and that the boy was a
trespasser. The law as to these issues was correctly
given to the jury; at least plaintiffs cannot be heard
to say it was not, and the established practice pre-
cludes us from setting aside a verdict so returned.
Whether the first doctrine is applicable here we do
not have to decide. But if it be assumed that defend-
ants are wrong in their contentions with respect to
both of these defenses mentioned, and we do not inti-
mate they are, still, if they be dismissed from con-
sideration entirely, the verdict could not be set aside,

because it is altogether clear, for other reasons, that defendants were not responsible for the injury.

Defendants provided seats in the grand stand for all the spectators, from which place they could see and enjoy the entertainment without the slightest probability of danger to themselves. It would seem from the evidence, though it is not entirely clear, that the balloon race was, for some reason, delayed and not given in the order on the program of events. However that may be, and it is not important, it is undisputed that about the hour of 5:30 in the afternoon, and after all of the other entertainments were at an end, and nearly all the spectators had left the grounds, defendants' manager went to the open field or enclosure in front of the grand stand, where the balloons were fastened, and asked the aeronauts why the race had not been run. The answer was that the wind was too high safely to make the attempt. After some further conversation upon the subject, the manager forbade any ascensions or, as he expressed it, "called the thing off," and, supposing that the race would be given up, left the grounds, believing that his direction would be followed. Standing near the balloons were fifty to one hundred people, who, when the other exhibitions were over, left their seats in the grand stand, and, from curiosity, or some other undisclosed reason, passed over the intervening driving or racing track, on either side of which was a fence, and went onto the open field beyond. After the manager had gone, some of the spectators jeered at one of the aeronauts for not making the race, and persisted in twitting him with his failure to make an attempt to do so and were clamoring for it. Apparently in response to these demands, one of the aeronauts said that if some of those present would assist in raising his balloon, he would try to gratify their desire, at the same time warning the spectators to

stand back from the balloon. Some of the spectators rendered the desired help, and it was at this time the pole fell, inflicting the injury. That the calling off of the exhibition was made as stated, is not contradicted. These people, including the boy, voluntarily left their place of safety and, with full knowledge of the danger, if any, of the falling of the pole that was swaying in the wind, took their station close by the balloon, though warned to stand away from it, and, after defendants had called off the exhibition and left the grounds, the attempt to ascend was made, not by request of defendants, or anyone representing them, but at the demand of the spectators themselves. Under such a state of facts, we do not see, and plaintiffs' counsel have not produced any authority showing, how defendants can be held liable. The judgment must, therefore, be affirmed.　　·　*Affirmed.*

Chief Justice Steele and Mr. Justice Musser concur.