No. 15,325.

LAKESIDE PARK COMPANY *v.* WEIN.

(141 P. [2d] 171)

Decided August 31, 1943.

Mr. FELIX L. O'NEILL, for plaintiff in error.

Messrs. DAVIS & LUTZ, Mr. M. S. GINSBERG, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court,

THIS action was instituted below by defendant in error, Jennie Shiler, as the natural guardian and next friend of Shirley Wein, a minor aged twelve, against plaintiff in error, Lakeside Park Company, for damages for personal injuries suffered by said Shirley Wein when she was struck on the head by a rolling pin thrown by a contestant in one of the games at the park on January 27, 1941. The action was based on the alleged negligence of the company. The matter was tried to the court without a jury, findings on the issues were in favor of plaintiff and judgment was duly awarded her in the sum of $750 and costs. To reverse this judgment, plaintiff in error, to which we hereinafter refer as the company, brings the matter here by writ of error. For convenience Shirley Wein will be herein designated as plaintiff or by name.

On the day in question Shirley, in company with her parents and brother, went to the park to spend the afternoon, paying the usual admission fee of five cents. After walking around for a time they noticed a group of people gathered in what is known as the "Sunken Gardens," which is an area approximately 200 feet long and 75 feet wide, about two and a half to three feet below the level of the surrounding ground, and enclosed by a fence. This area had been leased for the day (January 27, 1941) to the employees of the Chicago, Burlington & Quincy Railroad Company and Colorado & Southern Railway Company for picnic purposes and at the time Shirley and her associates appeared on the scene, a program of various contests was in progress. After watching these contests for some time, Shirley asked her mother for

money with which to buy some refreshments. She was given the money and was on her way to make the purchase at a time when a number of ladies (wives, daughters or friends of the railway employees) were having a rolling pin throwing contest, and just as she approached the steps leading out of the "Sunken Gardens" she was struck on the head by a rolling pin thrown by one of the contestants, which, having hit a tree, was deflected in her direction. At the time there were about three hundred people gathered along the sides of the gardens in a V-shaped group. There is testimony in the record indicating that a loud speaker was being used, and immediately prior to the rolling-pin contest the people were warned to stand back, and guards passed along, directing the spectators to stand back as far as possible. Both Shirley and her mother testified that they heard no such warning. It is difficult to determine from the record the exact route chosen by Shirley when she left the gardens. She says she passed behind the contestants, but testified at the same time that the rolling pin was thrown forward. She admits she was not watching for thrown pins as she was leaving the gardens; however, since it is conceded that she was hit by one of the pins, her exact location could only be important in the consideration of the question of contributory negligence, which we will discuss later.

There was a written agreement between the company and the railway employees, by which the employees were assured the use of the Sunken Gardens, and, among other concessions, they were granted reduced rates on various amusements in the park; the company, however, reserved the right to sell tickets at the main entrances to the park on that day. No effort was made to segregate the railway employees, and Shirley had been given a handbill by one of them which set out the various events on the program.

The above we think is a sufficient statement of the factual situation as presented by the record.

We shall consider briefly the points specified as error. They are: 1. The court erred when it found, contrary to the law and the evidence, that defendant had violated a duty to plaintiff; 2. that it erred in holding that the injury suffered by plaintiff was the proximate result of defendant's alleged act; 3. that "the court committed reversible error when it found, contrary to the law and the evidence, that plaintiff was not guilty of contributory negligence."

1. The principal point argued here is that the railway employees acted in the capacity of an independent contractor, or concessionaire, and had exclusive control of the premises. We are of the opinion, however, that such relationship was not established by the evidence. Several elements of control, including that of a general policing of the premises, remained in the park management and it is not suggested that the latter could not have forbidden this particular contest, and, even though not forbidden, we think it should have taken the reasonable precaution of keeping spectators of the contest safely out of range of any thrown rolling pins. Certainly in these two particulars, at least, the company owed a duty to plaintiff.

2. There is no dispute concerning the fact that Shirley was struck on the head by the rolling pin, and we believe that the company might reasonably have anticipated that in view of the conditions present it was possible that an accident such as occurred might result from such a contest, and that is sufficient to establish proximate cause so far as the company's failure of duty is concerned. The company, if it did not actually know the contest was taking place, clearly was charged with notice, because handbills describing the various events, including the contest under consideration, were distributed freely over the grounds, and the public generally invited to witness them.

3. There was no showing of contributory negligence such as would warrant a reversal of the judgment.

The action was instituted on behalf of Shirley alone. She had a right to be where she was in the crowd, and the record is silent as to what action, if any, she should have taken to avoid the accident. "Infants are bound to use that degree of care only which ordinarily prudent children of similar age and like intelligence are accustomed to use under like circumstances." 62 C.J., p. 875, note 42 [a] and cases cited. We think the fact that Shirley was not taking the precaution to watch for and avoid flying rolling pins at the time she was injured does not exclude her from the benefits of this rule.

All of the points urged by counsel for the company for reversal are answered in the opinion of the case of *Easler v. Downie Amusement Co., Inc.,* 125 Me. 334, 133 Atl. 905, 53 A.L.R. 847, and a comprehensive review of pertinent authorities may be found in the annotation in 53 A.L.R. at page 855. The Colorado cases upon which he relies for reversal, viz., *Burns v. Herman,* 48 Colo. 359, 113 Pac. 310, *Stout v. Denver Park & Amusement Co.,* 87 Colo. 294, 287 Pac. 650, and *Denver Park & Amusement Co. v. Pflug,* 2 F. (2d) 961, are distinguishable from the instant case on the facts.

Our conclusion is that the trial court properly appraised the situation and correctly resolved the issues.

The judgment is affirmed.

MR. JUSTICE GOUDY dissents.